# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

BRIAN ALLEN SCOTT,

              *Plaintiff*,

*v.*

COMMISSIONER OF SOCIAL SECURITY,

              *Defendant*.

_____/

CASE NO. 16-11922

DISTRICT JUDGE ROBERT H. CLELAND

MAGISTRATE JUDGE PATRICIA T. MORRIS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT (Docs. 18, 22)

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence does not support the Commissioner's determination that Scott is not disabled. Accordingly, **IT IS RECOMMENDED** that Scott's Motion for Summary Judgment (Doc. 18) be **GRANTED**, that the Commissioner's Motion for Summary Judgment (Doc. 22) be **DENIED**, and that this case be **REMANDED for further proceedings under Sentence Four of 42 U.S.C. § 405(g).**

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned magistrate judge for the purpose of reviewing a final decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's claim for Supplemental Security Income ("SSI") under Title XVI, 42

U.S.C. § 1381 *et seq*. (Doc. 3; Tr. 9-11). The matter is currently before the Court on cross-motions for summary judgment. (Docs. 18, 22).

Plaintiff Brian Allen Scott was thirty-seven years old as of June 20, 2014, the date of the ALJ's decision. (Tr. 25, 120). Scott requested a hearing before an Administrative Law Judge ("ALJ"), which took place before ALJ Paul W. Jones on May 15, 2014. (Tr. 30-62). Scott, represented by attorney Kathleen Conklin, testified, as did vocational expert ("VE") David Huntington. (*Id*.). On June 20, 2014, the ALJ issued a written decision in which he found Scott not disabled. (Tr. 17-25). On October 20, 2015, the Appeals Council denied review. (Tr. 9-11). Scott filed for judicial review of that final decision on May 27, 2016. (Doc. 1).

### B.    Standard of Review

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 506 (6th Cir. 2014) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id*. at 286 (internal citations omitted).

### C.    Framework for Disability Determinations

Under the Act, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC [residual

functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241

(citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.    ALJ Findings

Following the five-step sequential analysis, the ALJ found Scott not disabled

under the Act. (Tr. 25). The ALJ found at Step One that Scott had not engaged in

substantial gainful activity following the alleged onset date, May 12, 2013. (Tr. 19). At

Step Two, the ALJ concluded that Scott had the following severe impairments: "spine

disorder and arthritis." (*Id.*). At Step Three, the ALJ found that Scott's combination of

impairments did not meet or equal one of the listed impairments. (Tr. 20). The ALJ then

found that Scott had the residual functional capacity ("RFC") to perform work at the light

level of exertion without further restrictions. (Tr. 20-23). At Step Four, the ALJ found

that Scott could not perform any past relevant work. (Tr. 23). At Step Five, the ALJ

found that Scott retained the ability to perform work which exists in significant numbers

in the national economy. (Tr. 24).

### E.    Administrative Record

#### 1.    Medical Evidence

The Court has thoroughly reviewed Scott's medical record. In lieu of summarizing

his medical history here, the Court will make references and provide citations to the

record as necessary in its discussion of the parties' arguments.

## 2.        Application Reports and Administrative Hearing

### i.        Scott's Function Report

Scott completed a function report on May 8, 2013. (Tr. 159-66). Scott reported that he lived in a home with family. (Tr. 159). He had difficulty bending, moving quickly, reaching, and walking due to hip pain. (*Id*.). His spine was fused at two points, and he had to "take special care of [his] right hand, to prevent another infection." (*Id*.). His days consisted of taking pain and arthritis medication, moving around "to loosen up," eating, and sleeping. (Tr. 160). He could no longer run, jump, dunk a basketball, or bend over to touch his toes. (*Id*.). When asked how his conditions affected his sleep, Scott puzzlingly wrote "I don't." (*Id*.). As to personal care, he could not button his clothing, put on shoes, or wash past his knees; he also had trouble gripping silverware and wiping on the toilet. (*Id*.). He found it particularly difficult to prepare meals because "it's extra hard trying to cook with a cane." (Tr. 161). He had difficulty gripping coins and opening bottles or jars. (Tr. 162).

Scott cleaned his room with the use of a "grabber." (Tr. 161). He kept his walking area free of obstruction to lessen the risk of falls. (*Id*.). His ability to perform other chores was restricted by his body's tendency to "snap[], crackle[], and pop[]" when he moved. (Tr. 162). He rode in cars, but did not drive due to lack of a license. (*Id*.). He performed no shopping, instead relying on friends or family. (*Id*.).

Scott's hobby was watching basketball; he sat up or laid down as necessary. (Tr. 163). He used a computer "not to [sic] often" due to being "not very good with computers." (*Id.*). He visited a doctor's office weekly for injections of anti-arthritis medication. (*Id.*). Scott felt that his illnesses effectively confined him to his home. (Tr. 164).

Scott attested to difficulty performing all postural and exertional activities, along with limitations to his ability to concentrate and complete tasks. (Tr. 164). During "flare ups" Scott would sit in a recliner and "try not to move a muscle." (*Id.*). His muscle spasms were "so intense, [he] drop[ped] to [his] knee[s]." (*Id.*). He could walk just "a few minutes," dependent upon when his "body decides . . . it's ready." (*Id.*). He could pay attention for "not long at all" for unstated reasons. (*Id.*). He expressed concern that he was not receiving adequate treatment for his condition "due to the lack of health insurance." (Tr. 165). He used a cane and back brace "every day" since 2010. (*Id.*).

Scott also wrote that his medications caused drowsiness, dry mouth, upset stomach, a weakened immune system, perspiration, and light headedness. (Tr. 166). He had on two occasions experienced hand infections, which forced him to temporarily cease use of an anti-arthritis medication. (*Id.*). During these periods, his pain was "unbearable." (*Id.*).

## ii.     Scott's Testimony at the Administrative Hearing

At the May 15, 2014, hearing before the ALJ, Scott testified that he now stood only five foot ten, whereas his prior height was six foot one. (Tr. 33). His father was disabled due to arthritis, diabetes, and cholesterol issues. (Tr. 34). He last worked in 2009 in construction. (Tr. 37). That work involved lifting weights over one hundred pounds on occasion, along with much climbing, squatting, and other exertional and postural challenges. (Tr. 38). He quit that work shortly before his first doctor's visit regarding his present health problems. (Tr. 39). He previously worked in a factory between 1999 and 2004. (*Id*.). Scott seemed confused regarding the precise dates and scope of that work. (Tr. 40). In 2005 and 2006 he worked at his grandfather's junkyard. (Tr. 41). In 2004 he was incarcerated for about a year following a third drunk driving conviction. (Tr. 42). Scott found it difficult to obtain employment following his felony conviction. (Tr. 43).

In 2012 Scott hurt his finger while working on a motor vehicle; this resulted in an infection which reoccurred multiple times hence. (Tr. 45-46).

Scott testified that he first learned of his ankylosing spondylitis[1] in 2009. (Tr. 49). The ALJ acknowledged that "x-rays show that you have a fusion, that your back is starting to fuse in the . . . neck area, and then in lumbar spine, lower back." (*Id*.). Scott asserted that he could not touch the floor or tie his shoes. (*Id*.). He could not turn his head

---

[1] Ankylosing Spondylitis is "a form of degenerative joint disease that affects the spine. It is a systemic illness of unknown etiology, affecting young persons predominantly, and producing pain and stiffness as a result of inflammation of the sacroiliac, intervertebral, and costovertebral joints." Dorland's Illustrated Medical Dictionary, 1779 (31st ed. 2007).

without turning his entire body. (*Id*.). He experienced chronic pain "all the time," and took the medications Flexeril, Norco, Enbrel, and Mobic for treatment of this pain. (Tr. 50). He testified to side effects including dizziness and nausea. (*Id*.).

Scott asserted that he also suffered from "degenerative hip disease" which sometimes flared up following exertion or extended periods of sitting. (Tr. 51). He "fell numerous times" during the past winter. (*Id*.). He was able to reach no further than his shins while bending. (*Id*.). Scott offered to demonstrate his inability to reach further, but the ALJ declined. (*Id*.). Scott reported that his pain did not improve with physical therapy, and that his ability to reach actually dwindled over the course of therapy. (*Id*.). Restriction to his reaching ability was "up and down" and generally uncontrolled. (Tr. 52).

Scott made use of a "grabber" device for picking up objects off the floor. (Tr. 52). He also used an airbed in an attempt to lessen his pain, which offered incomplete relief. (*Id*.). Use of the anti-arthritic medication Enbrel provided some incomplete relief; without that medication he was "pretty much on bed rest," and was unable to "do much at all." (*Id*.). He required assistance putting on shoes, showering, dressing, and buttoning shirts. (Tr. 53). He sometimes went shopping, but left stores when his pain became unbearable. (*Id*.). Standing for extended periods would cause Scott's hip to "start to lock up;" he found some relief by moving his leg around to "keep the blood circulating." (Tr. 53-54).

Scott made use of a back brace at the hearing. (Tr. 55). He also attested to vomiting shortly before the hearing, apparently the result of his medications. (*Id.*). Scott stated that he might need a hip replacement, but would be unable to acquire one due to the limited availability of health insurance. (*Id.*).

The ALJ queried whether Scott's chronic infections were diagnosed in his medical record; Scott again offered to "show [the ALJ] my leg" as proof. (Tr. 56). Scott's attorney asserted that lab test results showed the presence of the bacterial infection MRSA, but the ALJ repeatedly asked whether that condition had been diagnosed. (Tr. 56-58).

The ALJ also asked Scott about the heaviest weight he could lift. (Tr. 59). Scott affirmed that he could lift no weight from the ground, because he could not bend over sufficiently to pick up any object. (*Id.*). From table height, Scott estimated he could lift fifteen pounds. (*Id.*). He could stand for ten to fifteen minutes. (*Id.*). He could not turn at the waist. (Tr. 60). The ALJ asked whether Scott sometimes had "bad days" where his pain was so severe that he was immobilized or unwilling to leave the house. (Tr. 60-61). Scott asserted that about half of his days were "bad days," and that the day of the hearing was such a day. (*Id.*).

### iv.    The VE's Testimony at the Administrative Hearing

The ALJ then called upon the services of a VE to determine Scott's ability to perform work. (Tr. 47). The ALJ asked the VE questions regarding Scott's past work, but

because the ALJ did not premise his decision on Scott's ability to return to his past work, these questions are not pertinent to the instant action. (*Id*.).

The ALJ then asked the VE to assume a hypothetical individual with Scott's age, education, and work experience, and who could perform work at the light level of exertion with "no other limitations." (Tr. 47). The VE found that such a person could work as a small products assembler (223,000 jobs nationally), assembly press operator (same), and folding machine operator (52,000 jobs).

Scott's attorney asked the VE whether a worker who missed two weeks per four months of work would be able to perform competitive work; the VE answered no. (Tr. 61).

## F.  Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations carve the evidence into various categories, "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513. "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* § 404.1513(a). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* § 404.1513(d). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2. Both "acceptable" and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions

"about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.* at *2. When "acceptable medical sources" issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her RFC. *Id.* at 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). *See also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to "other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-3p, 2006 WL 2329939, at *2.

Certain opinions of a treating physician, in contrast, receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case

record." 20 C.F.R. § 404.1527(d)(2). *See also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2. Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2. The ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the individual's RFC, and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2). *See also Hammond v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5 (1996). *See also Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec. of Health & Human Servs*, 882 F. Supp. 637, 640-41

(E.D. Mich. 1994), *aff'd*, 51 F.3d 273, 1995 WL 138930, at *1 (6th Cir. 1995) (unpublished table decision).

An ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, No. 09-5773, 2011 WL 180789, at *4 (6th Cir. Jan. 19, 2011) (citing *Hammond v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2. The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-

related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2.

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quotation omitted), a claimant's description of his or her physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," 20 C.F.R. § 404.1528(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. SSR 96-7p, 1996 WL 374186, at *1. Instead, the absence of objective confirming evidence forces the ALJ to consider the following factors:

(i) [D]aily activities;
(ii) The location, duration, frequency, and intensity of . . . pain;
(iii) Precipitating and aggravating factors;
(iv) The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;
(v) Treatment, other than medication, . . . received for relief of . . . pain;
(vi) Any measures . . . used to relieve . . . pain.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). *See also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); SSR 96-7p, 1996 WL 374186, at *3. Furthermore, the claimant's work history and the consistency of his or her subjective statements are also relevant. 20 C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at *5.

The claimant must provide evidence establishing her RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a

15

disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A). *See also Bowen*, 482 U.S. at 146 n.5. The RFC "is the most he [or she] can still do despite his [or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2). A hypothetical question to the VE is valid if it includes all credible limitations developed prior to Step Five. *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *Donald v. Comm'r of Soc. Sec.*, No. 08-14784-BC, 2009 WL 4730453, at *7 (E.D. Mich. Dec. 9, 2009).

### G.    Analysis

Scott argues that that the ALJ erred in the following ways: 1) Failing to acquire the opinion of a medical expert to determine whether Scott equaled Listing 14.09(C); 2) Impermissibly interpreting raw medical data and giving inadequate weight to the opinion of a treating physician. These arguments will be addressed in turn.

### 1.    The ALJ Erroneously Failed to Acquire a Medical Opinion on the Issue of Listing Equivalency

Scott first argues that the ALJ erred by failing to acquire a medical opinion on the issue of equivalency. Claimants bear the burden of demonstrating that they meet or equal a listing at Step Three. *See Thacker v. Soc. Sec. Admin.*, 93 Fed. Appx. 725, 727 (6th Cir. 2004). The ALJ has a coterminous duty to consider whether the claimant's ailments, both severe and non-severe, meet or equal a listed impairment at Step Three. *See McGlothin v. Comm'r of Soc. Sec.*, 299 Fed. Appx. 516, 522 (6th Cir. 2008). The ALJ may determine

whether a claimant meets a listing without assistance, but must employ a medical expert to determine whether the claimant equals a listed impairment. *See Retka v. Comm'r of Soc. Sec.*, 1995 WL 697215, at *2 (6th Cir. Nov. 22, 1995) ("Generally, the opinion of a medical expert is required before a determination of medical equivalence is made.") (citing 20 C.F.R. § 416.926(b)).

A claimant meets a listed impairment when they present proof of each of the criteria listed in the impairment description. *See* 20 C.F.R. § 416.925(c)(3) ("We will find that your impairment(s) meets . . . a listing when it satisfies all of the criteria of that listing, including any relevant criteria in the introduction."). Determining whether a claimant "equals" a listed impairment is less straightforward. A claimant's impairments medically equals a listed impairment when "it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a). An impairment may "equal" a listed impairment even where the claimant does "not exhibit one or more of the findings specified in the particular listing," or if the claimant suffers from a non-listed impairment that is "closely analogous" to a listed impairment, or where the claimant suffers from a "combination of impairments, no one of which meets a listing." *Id.* at § 404.1536(b)(1)(A)-(b)(3).

Here, the Commissioner opted to use the "Single Decisionmaker" model for resolving Plaintiff's claims at the administrative level. (Tr. 69). The single decisionmaker model stems from 20 C.F.R. §§ 404.1406(b)(2) and 404.906(b)(2); these regulations

provide for experimental, stream-lined procedures that eliminated the reconsideration level of review and allowed claims to go directly from the initial denial to ALJ hearing. *See Crooks v. Comm'r of Soc. Sec.*, No. 12–cv–13365, 2013 WL 4502162, at *9 (E.D. Mich. Aug. 22, 2013). "Most significantly, it allowed the state agency employee (the single decisionmaker) to render the initial denial of benefits without documenting medical opinions from the state agency medical consultants." *Id*. At the appellate level, including the proceedings before the ALJ, these Physical RFC forms completed by SDMs are "not opinion evidence." *Id*. (citing The Programs Operations Manual System ("POMS") DI § 24510.05). "Accordingly, under the regulations and agency policy, SDM assessments have no place in an ALJ's disability determination." *White v. Comm'r of Soc. Sec.*, No. 12–cv–12833, 2013 WL 4414727, at *8 (E.D. Mich. Aug. 14, 2013).

The Commissioner concedes, as she must, that the ALJ did not rely upon the findings of a medical expert in determining that Scott does not equal a listed impairment. (Doc. 22 at 11). However, she argues that remand is not necessary because "the Commissioner's policy of requiring ALJs to obtain a medical opinion on equivalence did not relieve Plaintiff of his own burden to present evidence of equivalence." (*Id*. at 11-12). She further notes that some courts have refused to remand where the ALJ's failure to obtain a medical opinion was harmless, such as where "the evidence does not demonstrate the possibility that [the plaintiff] could meet the criteria of a listed impairment." (*Id*. at 12) (quoting *Leveque v. Colvin*, No. 14-12096, 2015 WL 4601156, at

*6 (E.D. Mich. July 31, 2015), report and recommendation adopted by 2015 WL 5612016 (Sept. 23, 2015)).

The Commissioner's argument contains a kernel of truth: even where an ALJ fails to follow the appropriate procedures at Step Three, that error may be harmless where there is no reasonable possibility that the claimant met or equaled a listed impairment. The ALJ "need not discuss listings that the applicant clearly does not meet, especially when the claimant does not raise the listing before the ALJ." *Sheeks v. Comm'r of Soc. Sec. Admin.*, 544 F. App'x 639, 641 (6th Cir. 2013). *See also Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006) ("The mere failure to discuss every single impairment under the step three analysis is not a procedural error."). "If, however, the record 'raise[s] a substantial question as to whether [the claimant] could qualify as disabled' under a listing, the ALJ should discuss that listing." *Id.* (quoting *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)). The ALJ's failure to consult a medical examiner where there is any realistic possibility that the claimant could equal a listed impairment necessitates remand. *See, e.g.*, *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011) ("[I]n this case, correction of such an error is not merely a formalistic matter of procedure, for it is possible that the evidence Reynolds put forth could meet this listing."); *Hardy v. Comm'r of Soc. Sec.*, No. CV 15-10010, 2016 WL 1128085, at *1 (E.D. Mich. Mar. 23, 2016) (finding that an ALJ's error was "not harmless . . . because an expert *could* have found that Plaintiff's impairments were equivalent to the listing") (emphasis supplied);

19

*Piekarz v. Comm'r of Soc. Sec.*, No. 15-CV-10689, 2015 WL 9660027, at *5 (E.D. Mich. Dec. 16, 2015) ("[T]here is at least some evidence that Plaintiff may meet or equal Listing 1.04A, thus the ALJ's failure to consult a medical expert is not harmless."), report and recommendation adopted, No. 15-10689, 2016 WL 74877 (E.D. Mich. Jan. 7, 2016).

In essence, an ALJ must evaluate whether a claimant meets or equals a particular listed impairment when the ALJ is fairly on notice that the claimant could meet or equal that impairment. *See Isham v. Colvin*, No. CIV. 13-2377 JRT/SER, 2015 WL 691411, at *30 (D. Minn. Feb. 18, 2015) ("Because the ALJ was on notice from the hearings and counsel's brief that mental retardation under Listing 12.05C was at issue, the ALJ should have considered Listing 12.05C."); *Swint v. Comm'r of Soc. Sec.*, No. 1:13CV582, 2014 WL 4426246, at *5 (S.D. Ohio Sept. 8, 2014) (remanding where the claimant did not specifically discuss Listing 3.03, which relates to asthma, but presented arguments relating to asthma which were sufficient to put the ALJ on notice that the listing was implicated).

In this case, the facts before the ALJ clearly make out a plausible argument that Scott equals Listing 14.09(C). In relevant part, that listing provides that a claimant is disabled where they suffer from:

> Inflammatory arthritis. As described in 14.00D6. With . . . C. Ankylosing spondylitis or other spondyloarthropathies, with:
>
> 1. Ankylosis (fixation) of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical

examination at 45° or more of flexion from the vertical position (zero degrees); or

2.Ankylosis (fixation) of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination at 30° or more of flexion (but less than 45°) measured from the vertical position (zero degrees), and involvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity.

20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 14.09(C). The definition of inflammatory arthritis is too lengthy for convenient reproduction in this decision, but in essence is what it says on the tin: arthritis involving inflammation. *See* 20 C.F.R. § Pt. 404, Subpt. P, App'x 1, § 14.00D6. Therefore, to meet Listing 14.09(C), a claimant must show that they have the following: i) Inflammatory arthritis; ii) Ankylosing spondylitis; iii) Ankylosis of the dorsolumbar or cervical spine (as shown by appropriate radiological evidence).

Turning next to the ALJ's decision, the ALJ noted evidence of "bony ankylosis from C2 through C6 with right-sided spurring at C3-C4," along with "ankylosis spondylitis involving the lumbar spine and both [sacroiliac (*i.e.* "SI")] joints," and "ankylosing spondylitis between C2 and C7." (Tr. 21). The ALJ noted, but rejected (as will be discussed in greater depth below) findings by Dr. Raza that Scott's spine was fused at the SI joints. (Tr. 23). Dr. Raza's notes and the objective medical evidence confirm that Scott suffered from ankylosing spondylitis of the cervical spine and lumbar spine, and of the SI joint. (Tr. 336-62). The ALJ found at Step Two that Scott suffered from arthritis (Tr. 19), though neither party discusses whether Scott's arthritis was

inflammatory. In any case, ankylosing spondylitis is itself a form of inflammatory arthritis. *See* n. 1, *supra*.

In sum, Scott showed objective evidence of arthritis, ankylosing spondylitis, and ankylosis of the lumbar and cervical spine. Whether or not these findings perfectly jibed with Listing 14.09(C), the ALJ was clearly on notice of the possibility that Scott met or equaled that listing. The Commissioner herself notes that the ALJ "thoroughly discussed Plaintiff's ankylosing spondylosis in the decision," suggesting that the ALJ was very much on notice of this impairment, and should have considered Listing 14.09(C). (Doc. 22 at 8). I further note that Scott's pre-ALJ-hearing brief also points out his arthritis and ankylosing spondylitis. (Tr. 180-82). By any measure, the ALJ was obliged to specifically consider Listing 14.09(C).

The ALJ's failure at Step Three is twofold. First, while not discussed by the parties, I note that the ALJ's findings at Step Three are composed exclusively of *pro forma* language, offering no insight into the ALJ's reasoning for rejecting Scott's argument at that step. (Tr. 20). *See Taylor v. Colvin*, No. 15 CV 3176, 2016 WL 6774230, at *3 (N.D. Ill. Nov. 14, 2016) ("When an ALJ considers if a claimant's impairments meet or equal a listing, the ALJ must identify the relevant listing by name and provide more than a perfunctory analysis of its requirements."). I recognize that the ALJ may rely on findings in other sections of their decision rather than reproducing their findings in the section reserved for Step Three. *See Bledsoe*, 165 F. App'x at 411. Yet

here, even when viewed in totality, the ALJ's decision does not offer insight into why he concluded that Scott does not meet or equal Listing 14.09(C). This does not provide a robust foundation for judicial review, and remand is appropriate to correct this error. *See Christephore v. Comm'r of Soc. Sec.*, No. 11-13547, 2012 WL 2274328, at *6 (E.D. Mich. June 18, 2012) ("When considering presumptive disability at Step Three, an ALJ must analyze the claimant's impairments in relation to the Listed Impairments and must give a reasoned explanation of his findings and conclusions in order to facilitate meaningful review."); *see also Taltoan v. Colvin*, No. 4:13CV2526, 2014 WL 5795561, at *11 (N.D. Ohio Nov. 6, 2014) (collecting cases wherein the ALJ's failure to explain his or her Step Three finding resulted in remand).

Second, the ALJ erred by failing to call upon the services of a medical expert to determine whether Scott equaled Listing 14.09(C). The ALJ was not qualified to determine whether Scott equaled a listed impairment, except if the record was so plainly devoid of evidence that Scott could not conceivably equal a listed impairment. As noted above, Scott has put forth sufficient evidence to demonstrate that he could possibly meet Listing 14.09(C). The Commissioner argues that the ALJ's error was harmless because Scott has not shown that his impairment equals Listing 14.09(C). (Doc. 22 at 6-7). Yet the Court, the Commissioner, and the ALJ are all equally unqualified to make such a medical judgment. *See Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (noting that ALJs are not qualified to render medical judgments and remanding);

*Schneiderman v. Colvin*, No. 2:14-CV-00120-JTR, 2015 WL 4623747, at *4 (E.D. Wash. Aug. 3, 2015) (holding that courts are unqualified to render medical judgments).

The Commissioner says little about whether Scott equals Listing 14.09(C), asserting only that Scott has not presented sufficient evidence. (Doc. 22 at 7, 11, 14). The Commissioner attempts to place the Court in the role of the physician, and asks that the Court find that the evidence of record could not support a finding that Scott's ailment equals Listing 14.09(C). This is not a case where the record is devoid of any evidence which could support a finding that Scott equals Listing 14.09(C). "[T]he court cannot say that the RFC findings in this case 'clearly reject' the possibility that plaintiff meets or equals the requirements of listed impairment [14.09(C)]." *Smith v. Barnhart*, No. 06-1157 MLB, 2007 WL 461472, at *4 (D. Kan. Feb. 13, 2007). The Commissioner cannot credibly argue that Scott "clearly does not meet" Listing 14.09(C). *Sheeks*, 544 F. App'x 641. The record raises "a substantial question" as to whether Scott equals that listing, and the ALJ's failure to consider (including through use of a medical expert) Listing 14.09(C) was error. *Id*. This is particularly true where the Sixth Circuit has emphasized that remand is appropriate where a claimant puts forth "specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing," not a finding from a physician that they actually meet or equal the listing. *See Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014). The Court declines the Commissioner's invitation to join the ALJ in playing doctor; two wrongs do not make a right. The ALJ's

error can be corrected only by resubmission of this matter to a medical expert qualified to determine whether Scott equals Listing 14.09(C).

The Commissioner's argument that Scott does not equal Listing 14.09(C) (and that the ALJ's failure to obtain a medical expert's review was harmless) suffers from an additional misunderstanding of the law. The Commissioner premises her defense of the ALJ's Step Three finding partly on the ALJ's findings that Scott was largely able to perform the necessary activities of daily living, that his spinal conditions were stable, and that his flexibility was severely restricted only when he was not on medication. (Doc. 22 at 7-14; Tr. 19-23). Yet Listing 14.09(C) is met, and the claimant conclusively found disabled, where the objective radiological evidence demonstrates the factors detailed above. Even assuming that Scott's activities of daily living were wide ranging, that his condition was stable, or that his flexibility was not severely restricted when taking medication, he would be disabled under Listing 14.09(C) if the objective radiological evidence was sufficient to meet or equal each of the requirements of that listing. Where a claimant meets or equals a listed impairment, they are "conclusively presumed" to be disabled, *see Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (quotation omitted), because those conditions are defined as being "severe enough to prevent and individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a).

In *Johnson v. Sec'y of Health & Human Servs.*, 794 F.2d 1106, 1113 (6th Cir. 1986) the Sixth Circuit considered the Commissioner's suggestion that a claimant could be found not disabled despite meeting or equaling a listed impairment. That court reviewed the applicable regulations, and concluded that "[t]he language of these regulations indicates that the Secretary intended that, when a claimant satisfies the listed criteria, the claimant is to be found disabled without further consideration." *Id*. The only factor which can disturb this conclusion is the performance of substantial gainful activity, "which is a factor that would stop the present disability inquiry at step one, forestalling any consideration of the Listing of Impairments, which occurs at step three." *Id*. at 1114. "Therefore, if a claimant is not engaged in substantial gainful activity and also validly meets a listing, the Secretary must find claimant disabled without regard to residual work capacity, age, education, or experience. It is not correct under the regulatory scheme to find that a claimant satisfies a listing but is nonetheless able to work." *Id*.

In fairness to the Commissioner, there are some listed impairments which must be met or equaled by demonstration of a lack of functional capacity. Listed impairments can be roughly divided into two categories: those which are met by way of objective physical criteria, and those which are met (in part) based on the claimant's residual functioning. For example, Listing 13.14 is met where a claimant suffers from small cell carcinoma of the lungs. *See* 20 C.F.R. § 404, Subpt. P, App'x 1, § 13.14. The listing is met whether or not the claimant is, despite their lung cancer, able to golf, cook, do cartwheels, squat, or

perform other exertional or postural activities. It can be determined whether the claimant meets that listing without recourse to interviews, treatment notes, or any other review of the claimant's residual functional capacity.

On the other hand, a claimant meets or equals Listing 14.09(D) where they experience inflammatory arthritis with:

> Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
>
> 1. Limitation of activities of daily living.
>
> 2. Limitation in maintaining social functioning.
>
> 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. § 404, Subpt. P, App'x 1, § 14.09(D). If Scott did alleged disability under Listing 14.09(D), review of his activities of daily living, social functioning, and ability to complete tasks would be supremely relevant to determination of whether he meets or equals that listing.

In this case, Scott alleged disability by way of equaling Listing 14.09(C). As detailed above, that listing requires (in short) a finding of inflammatory arthritis and ankylosing spondylitis, as demonstrated by "medically acceptable imaging." 20 C.F.R. § 404, Subpt. P, App'x 1, § 14.09(C). Therefore, whether Scott meets or equals that listing does not involve consideration of his activities of daily living, his social functioning, his ability to complete tasks, or any other aspect of his functional capacity. The

Commissioner, in her wisdom, has determined that where radiological evidence shows that a claimant suffers from the maladies in Listing 14.09(C), they are to be found disabled without further consideration of their functional capacity. Scott's functional capacity thus has no impact whatsoever on whether he meets or equals Listing 14.09(C). He either meets or equals Listing 14.09(C) based on his radiological evidence, or he does not. Scott has put forth a fair argument that he equals this listing, and determination of whether he is correct is a question for a medical expert.

### 2.    The ALJ Erroneously Interpreted Raw Medical Data

Scott also complains that the ALJ erred by interpreting raw medical data. (Doc. 18 at 9, 12). Courts in this circuit have regularly noted that, while it is for the ALJ to weigh the medical evidence, ALJs are not qualified to interpret raw medical data, and may not "play doctor." *See Klump v. Colvin*, No. CV 14-12428, 2016 WL 2747143, at *4 (E.D. Mich. Apr. 26, 2016) ("When determining a claimant's RFC, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.") (quotation omitted), report and recommendation adopted sub nom. *Klump v. Comm'r of Soc. Sec.*, No. CV 14-12428, 2016 WL 2986366 (E.D. Mich. May 24, 2016); *Wheeler v. Comm'r of Soc. Sec.*, No. 14-12540, 2015 WL 5461527, at *9 (E.D. Mich. Aug. 14, 2015) ("Nevertheless, courts have stressed the importance of medical opinions to support a claimant's RFC, and cautioned ALJs against relying on their own expertise in drawing RFC conclusions from raw medical data."), report and recommendation adopted, No. 14-

12540, 2015 WL 5460709 (E.D. Mich. Sept. 17, 2015); *Lenon v. Apfel*, 191 F. Supp. 2d 968, 978 (W.D. Tenn. 2001) ("It is the opinion of the undersigned that the ALJ . . . gave in to the temptation to play doctor in this case.").

The ALJ in this case yielded to the temptation to play doctor, and this flagrant error mandates remand. The ALJ's error is particularly virulent because he not only interpreted raw medical data, but also rendered a clearly erroneous interpretation of the data. That error formed the basis for his improper rejection of the most qualified physician's opinion. The ALJ found that "diagnostic x-rays do show cervical and lumbar/SI joint ankylosing spondylitis at some levels, but not 'complete fusion of the SI joints.'" (Tr. 23). This represents a contradiction of Dr. Raza's findings.[2] (Tr. 296).

The ALJ gave great weight to Dr. Raza's progress notes and clinical findings. (Tr. 23). His primary justification for giving Dr. Raza's opinion little weight was apparent inconsistency between Dr. Raza's finding of fusion and the ALJ's lay-interpretation of the raw radiological evidence. (*Id.*). Dr. Raza is a specialist in rheumatology, and the only rheumatologist whose findings appear in the record. As recognized by every party to this case, the ALJ was unqualified to make this judgment, and that judgment was in fact a

---

[2] Quizzically, the ALJ's statement also represents a contradiction of his own reading of the evidence at the oral hearing, wherein he noted that "x-rays show that you have a fusion . . . in the . . . neck area, and then in the lumbar spine, lower back." (Tr. 49). The ALJ did not address this apparent contradiction in his decision. This reversal poses a serious risk of prejudice to Scott; because the ALJ appeared to adopt the (correct) finding that Scott's spine was fused at the hearing, his attorney was not incentivized to belabor that point.

misreading of the evidence.[3] The ALJ's finding was thus not made in the context of weighing a physician's judgment, but instead is clearly a non-medical interpretation of raw medical data.

The Commissioner admits that the ALJ erred, but asserts that it was harmless because "the measurements needed to meet the listing were not satisfied by the evidence of record." (Doc. 22 at 10-11). This again represents a conflation of the concept of "meeting" a listing and "equaling" that listing. Scott need not precisely meet every element of Listing 14.09(C) to be found disabled. The question of whether his ailments reached the level of "equaling" Listing 14.09(C) is a question for a physician, and that expertise is sorely missing from the ALJ's decision.

The Commissioner asserts that the ALJ was justified in according little weight to Dr. Raza's opinion because "(1) the issue of whether a claimant is disabled is a decision reserved to the Commissioner; (2) diagnostic evidence did not indicate advanced stage disease; (3) Plaintiff was able to engage in activities of daily living; and (4) the opinion was inconsistent with Dr. Raza's treatment notes and other treatment notes in the record." (Doc. 22 at 14-15). The issue of disability is reserved to the Commissioner, thus a doctor's opinion on disability is not due any special significance and is indeed not treated as an opinion at all. *See* 20 C.F.R. § 404.1527(d)(3). Yet the Commissioner is still

---

[3] The ALJ's misinterpretation of the evidence demonstrates the wisdom behind the Commissioner's requirement that a medical expert's opinion be obtained on the issue of equivalence. ALJs lack medical expertise, and those who play doctor run the risk of permitting their ignorance-fueled-confidence to overrule the considered opinion of medical professionals.

required to "consider opinions from medical sources" on issues reserved to the Commissioner, including the issue of disability. *Id.* at § 404.1527(d)(2). That a doctor finds his or her patient disabled is not a justification for according little or no weight to a physician's other findings and opinions. This is particularly true because the Commissioner in many cases argues in favor of non-disability based on the lack of a physician finding that the claimant was disabled. *See, e.g.*, *Brzezinski v. Comm'r of Soc. Sec.*, No. 1:16-CV-522, 2017 WL 1395771, at *7 (W.D. Mich. Apr. 19, 2017) (quoting an ALJ's finding that "[n]o physician imposed a work preclusive limitation on claimant's functioning, or opined that he was disabled"). The Commissioner cannot have it both ways. A physician's finding that their patient is disabled provides weak evidence in favor of their disability claim, but it is assuredly not a reason to doubt the physician's opinion.

Reasons two and four are nothing more than restatements of the ALJ's erroneous conclusion that Scott's spine was not fused, and thus his spinal condition was not as severe as Dr. Raza concluded. As noted above, this finding was both improperly rendered and false. Justifications two and four therefore provide no support for the weight accorded to Dr. Raza's opinion.

The ALJ's third justification is irrelevant to the ALJ's finding at Step Three. As discussed *supra*, if Scott's back ailment equals Listing 14.09(C), he is to be found disabled regardless of his functional capacity. If, on remand, the ALJ concludes (after properly consulting a medical expert) that Scott does not equal Listing 14.09(C), he or

she should re-weigh Dr. Raza's opinion in recognition of the consistency between Dr. Raza's notes and his opinion, and consider this consistency at Steps Four and Five of the sequential evaluation process.

The Commissioner also notes that "Dr. Raza [did not] opine that Plaintiff met or equaled the listing for ankylosing spondylosis." (Doc. 22 at 11). The Commissioner points to no authority suggesting that the claimant's physicians must find that he or she meets or equals a listed impairment as a prerequisite for a finding of disability at Step Three. All physicians are specialists in medicine, but they do not necessarily possess the experience with the Commissioner's regulations necessary to determine whether a patient's ailments equal a listed impairment. This is precisely why the Commissioner requires that a medical expert be consulted before the ALJ concludes that a claimant's ailment does not equal a listed impairment. Medical experts employed by the Commissioner are experts in both medicine and the Social Security disability process, and are thus well positioned to determine whether a claimant equals a listing.

### 3. The ALJ's Decision is Internally Inconsistent

While not mentioned by the parties, I note an additional error in the ALJ's decision. The ALJ found at Step Two that Scott retained "the residual functional capacity to perform light work." (Tr. 20). Likewise, at the oral hearing the ALJ posed hypothetical questions to the VE involving a worker limited to the light level of exertion with "no other limitations." (Tr. 47). Yet at Step Five, the ALJ inconsistently asserted that "[i]f the

claimant had the residual functional capacity to perform the full range of light work, a finding of not disabled would be directed by Medical-Vocational Rule 202.20. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations." (Tr. 24). The ALJ is correct that a claimant of Scott's age (*i.e.* a "younger individual age 18-44") limited to the light level of exertion with no further limitations would be found not disabled under the Grids. *See* 20 C.F.R., Part 404, Subpart P, App'x 2. However, as detailed above, the ALJ's decision was profoundly flawed due to the ALJ's failure to obtain a medical expert's opinion on equivalency at Step Three, and by the ALJ's erroneous and improper rejection of Dr. Raza's interpretation of the radiological evidence. The ALJ's failure to apply the Grids at Step Five is thus inconsequential in the context of the current appeal. However, the ALJ's lack of care at Step Five gives further context to the errors made in the remainder of the decision. Scott has been forced to spend some three years pursuing administrative and judicial review of the ALJ's deeply flawed decision, seeking the relief which he is so plainly due.

### H.      Conclusion

The ALJ's finding that Scott did not equal Listing 14.09(C) was thus not properly supported by a medical expert's opinion. Only a medical expert can resolve this claim, thus remand is necessary. The ALJ's failure to mention any listing, much less discuss why Scott did not meet any listings, precludes meaningful judicial review. These errors

were not harmless because Scott has raised a substantial question regarding whether he equals that listing. If he does, he is to be found disabled regardless of any other factor, including his residual functional capacity.

The ALJ further erred by succumbing to the temptation to play doctor, evaluating raw radiological evidence. This error was compounded by the fact that the ALJ's interpretation of the radiological evidence is, as admitted by the Commissioner, incorrect. The ALJ's justifications for giving little weight to Dr. Raza's opinion are largely premised on this misreading of the evidence, thus the ALJ also erred in his weighing of that physician's opinion.

Finally, the ALJ's decision is internally inconsistent, further demonstrating a lack of care and precision crucial to the proper adjudication of a Social Security benefits appeal. Remand is necessary to correct these many and profound errors.

For the reasons stated above, the Court **RECOMMENDS** that Scott's Motion for Summary Judgment (Doc. 18) be **GRANTED**, that the Commissioner's Motion for Summary Judgment (Doc. 22) be **DENIED**, and that this case be **REMANDED for further proceedings under Sentence Four of 42 U.S.C. § 405(g).**

## III. <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A

party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Clark v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  May 23, 2017                    S/ PATRICIA T. MORRIS
                                       Patricia T. Morris
                                       United States Magistrate Judge




## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: May 23, 2017                     By s/Kristen Castaneda
                                       Case Manager